## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

JUDITH PROVENZA,

        Plaintiff,

v.                                  Case No:  2:15-cv-432-FtM-CM

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____

## ORDER

Judith Provenza seeks judicial review of the denial of her claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") by the Commissioner of the Social Security Administration ("Commissioner").   The Court has reviewed the record, the briefs and the applicable law.   For the reasons discussed herein, the decision of the Commissioner is affirmed.

### I.    Issues on Appeal

Plaintiff raised three issues:[1] (1) whether substantial evidence supports the finding of Administrative Law Judge M. Dwight Evans (the "ALJ") in the assessment of Plaintiff's residual functional capacity ("RFC") with respect to her alleged hand impairment and corresponding limitations; (2) whether the ALJ properly accounted for the medical opinions of Plaintiff's treating physician; and (3) whether substantial

---

[1] Any issue not raised by Plaintiff on appeal is deemed to be waived. *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ([A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed."), cited in *Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 856 (11th Cir. 2013).

evidence supports the ALJ's determination concerning the assessment of Plaintiff's credibility with respect to the severity of her mental impairment.

## II.   Procedural History and Summary of the ALJ Decision

On June 28, 2011, Plaintiff filed applications for DIB and SSI, alleging disability beginning June 1, 2011.   Tr. 201-13, 230.   The claims initially were denied and upon reconsideration.   Tr. 138-42, 143-48, 151-55, 156-60.   Plaintiff requested and received a hearing before an ALJ on October 17, 2013, during which she was represented by an attorney.   Tr. 30-81.   Plaintiff testified at the hearing.   *Id.*   The ALJ issued an unfavorable decision on December 13, 2013.   Tr. 14-23.

The ALJ found Plaintiff met the insured status requirements of the Social Security Act through December 31, 2015.   Tr. 16.   At step one, the ALJ concluded that Plaintiff has not engaged in any substantial gainful activity since June 1, 2011, the alleged onset date.   *Id.*   At step two, the ALJ found that Plaintiff has severe impairments of osteoarthritis, bilateral hand degenerative changes and fibromyalgia.   Tr. 17.   At step three, the ALJ concluded that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart B, Appendix 1 . . ."   Tr. 18.   After stating he carefully considered the entire record, the ALJ determined that Plaintiff has the RFC to

> Perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant is limited to frequent climbing ramps/stairs, but never climbing ladders/ropes/scaffolds; frequent balancing, stooping, kneeling or crouching; and only occasional crawling or reaching; and the claimant is limited to understanding, remembering, and carrying out simple routine, repetitive tasks or unskilled work.

Tr. 18.  The ALJ found that Plaintiff's medically determinable impairments reasonably could be expected to cause the alleged symptoms, but her statements concerning the intensity, persistence and limiting effects of the symptoms are not fully credible for reasons stated in the opinion.  Tr. 19.  Next, the ALJ found that Plaintiff is capable of performing her past relevant work as a meat counter clerk and an assistant manager in retail.  Tr. 21.  In comparing Plaintiff's RFC with the physical and mental demands of this work, the ALJ found that Plaintiff is able to perform it as actually and generally performed.  *Id.*  Thus, the ALJ concluded that Plaintiff has not been disabled through the date of the decision.  Tr. 23.  The Appeals Council denied Plaintiff's request for review of the ALJ's decision.  Tr. 1-6. Accordingly, the ALJ's decision is the final decision of the Commissioner.  On July 20, 2015, Plaintiff appealed to this Court, and this matter is now ripe for judicial review.  Doc. 1.

### III.    Social Security Act Eligibility and Standard of Review

A claimant is entitled to disability benefits when she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to either result in death or last for a continuous period of not less than twelve months.  42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. § 404.1505(a).  The Commissioner has established a five-step sequential analysis for evaluating a claim of disability.  *See* 20 C.F.R. §§ 404.1520; 416.920.  The Eleventh Circuit has summarized the five steps as follows:

(1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work; and (5) if not, whether, in light of his age, education, and work experience, the claimant can perform other work that exists in "significant numbers in the national economy."

*Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015) (citing 20 C.F.R. §§ 416.920(a)(4), (c)-(g), 416.960(c)(2); *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011)). The claimant bears the burden of persuasion through step four; and, at step five, the burden shifts to the Commissioner. *Id.*; *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).   The Eleventh Circuit has noted that the Commissioner's burden at step five is temporary, because "[i]f the Commissioner presents evidence that other work exists in significant numbers in the national economy, 'to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists.'"   *Atha*, 616 F. App'x at 933 (citing *Doughty v. Apfel*, 245 F.3d 1274, 1278 n. 2 (11th Cir.2001)).   The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence.   *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)).   The Commissioner's findings of fact are conclusive if supported by substantial evidence.   42 U.S.C. § 405(g).   Substantial evidence is "more than a scintilla, *i.e.*, evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion."   *Foote v. Chater*, 67 F.3d 1553, 1560

(11th Cir. 1995) (internal citations omitted); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (finding that "[s]ubstantial evidence is something more than a mere scintilla, but less than a preponderance") (internal citation omitted).

The Eleventh Circuit recently has restated that "[i]n determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings." *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) (citing *Black Diamond Coal Min. Co. v. Dir., OWCP*, 95 F.3d 1079, 1082 (11th Cir. 1996)). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." *Foote*, 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings). It is the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Lacina v. Commissioner*, 2015 WL 1453364, at *2 (11th Cir. 2015) (citing *Grant v. Richardson*, 445 F.2d 656 (5th Cir.1971)).

## IV.    Relevant Testimony and Medical Findings

At the time of the hearing on October 17, 2013, Plaintiff was 54 years old.   Tr. 33.   She previously worked as a baker, meat counter clerk and assistant retail manager.   Tr. 44, 71-72.   With respect to her limitations, Plaintiff testified that she is unable to work because she has trouble with the mobility of her hands due to her osteoarthritis and carpal tunnel syndrome, primarily her left hand, which has affected her reliability and availability to perform work on a regular basis.   Tr. 51-52.   She stated she cannot write for longer than five minutes or her fingers will "jam."   Tr. 52. She has trouble holding or gripping things, such as silverware or pens.   Tr. 53. Plaintiff stated her flare-ups, which can last anywhere from ten days to two weeks, occur about once a month, but appear to be getting worse.   Tr. 54-55.   In addition to the flare-ups, she testified that she has chronic pain in her hands.   Tr. 54.   She described, "[a] bad day is where [her fingers/joints] won't bend, they're swollen, they hurt . . . and . . . I can't move them.   They jam."   *Id.*   During her flare-ups, she has difficulty getting out of bed or eating.   Tr. 55.   On such occasions, she cannot read, sweep the floor, do the dishes, fold the laundry, take a shower or brush her teeth.   *Id.*

She takes medications for depression, osteoarthritis, rheumatoid arthritis, inflammatory arthritis, bursitis and carpal tunnel syndrome, which are prescribed by her rheumatologist, Ranjit K. Fernando, M.D., who at the time of the hearing Plaintiff had been seeing for about six years.   Tr. 59-60, 66.   Plaintiff testified that the only side effect she experiences from her medications are digestive problems from the Naproxen, so she has to take another pill prior to taking that medication.   Tr. 60.

She said she safely can lift or carry a half gallon of milk, about two pounds, but not repetitively or her wrist will give way.   Tr. 62-63.   Plaintiff testified she has difficulty reaching above her head and in front of her, but more so above or behind her, which makes it difficult to wash or blow dry her hair.   Tr. 63.   She said she loved her work and would like to go back to work, but is not capable of doing so.   Tr. 63-64.   The ALJ asked Plaintiff whether she had any nerve conductions studies, CT scans or MRIs done for her hand impairments, and she testified she had not.   Tr. 65-66, 68.   In addition to the Naproxen, she takes Ibuprofen as needed during the day.   Tr. 70.

The ALJ found that although Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, her statements concerning the intensity, persistence and limiting effects of those symptoms were generally not credible.   Tr. 19.   The ALJ first discussed Plaintiff's 2009 treatment records, in which she was examined by Juan Bustillo, M.D., for her advanced osteoarthritis on March 4, 2009.   Tr. 19-20, 364.   Prior to that time, Plaintiff was taking over-the-counter medications.   Tr. 364.   She reported difficulty with bathing, housework, laundry and meal preparation.   She reported no depression.   *Id.*   Dr. Bustillo noted nodes present in her hands, and tenderness and reduced range of proximal and distal interphalangeal joints. At the time, Plaintiff was working as a baker, and reported difficulty lifting trays and with her grip.   Tr. 365.   Dr. Bustillo explained that Plaintiff's arthritis was more likely genetic (her mother had rheumatoid arthritis) than age-related, and she may have to modify some of her work. *Id.*   He recommended Tylenol for pain and Voltaren gel daily, and gave Plaintiff

exercises to help with her hand grip strength.   *Id.*

The ALJ next discussed the medical source statement completed by Dr. Fernando on August 5, 2011.   Tr. 20.   Dr. Fernando noted that Plaintiff had decreased grip strength, decreased ability to perform fine manipulation, decreased ability to perform gross manipulation, chronic pain, joint deformity and limited range of motion in her hands.   Tr. 397.   Nonetheless, he rated Plaintiff's grip strength 4/5 and her lower extremity strength 5/5.   *Id.*   Dr. Fernando opined that Plaintiff is not capable of performing fine or gross manipulations on a sustained basis.   *Id.*

Next the ALJ reviewed the additional medical records of Dr. Fernando from May 2010 through January 2013.   Tr. 20, 426-435.   In Dr. Fernando's Medical Statement Regarding Inflammatory Arthritis completed on January 28, 2013 in support of Plaintiff's Social Security disability claim, he noted Plaintiff's history of joint pain, swelling and tenderness; morning stiffness; synovial inflammation and limitation of motion in her joints.   Tr. 431.   Dr. Fernando noted inflammation in both of Plaintiff's hands, wrists, shoulders, hips and her cervical spine.   *Id.*   He opined Plaintiff could stand and/or sit for up to thirty minutes; lift up to ten pounds occasionally and five pounds frequently; and occasionally bend, stoop, perform fine and gross manipulation of both hands and raise both arms over shoulder level.   Tr. 432.   Further, Dr. Fernando opined Plaintiff could not work for more than two hours per day.   *Id.*   The ALJ also summarized the results of the Fibromyalgia Residual Functional Questionnaire completed by Dr. Fernando on the same date:

> He indicated the claimant experiences multiple tender points; nonrestorative sleep; chronic fatigue; morning stiffness; subjective

swelling; depression vestibular dysfunction; numbness and tingling; sicca symptoms; anxiety; panic attacks; chronic fatigue syndrome; cognitive impairment; multiple trigger points; and myofascial pain syndrome. The location of the pain is in the lumbosacral spine and cervical spine. He opined that the claimant's experience of pain [is] sufficiently severe to interfere with attention and concentration often. He also indicated the claimant has marked limitation in the ability to deal with work stress. The claimant has significant limitations in reaching, handling, or fingering.

Tr. 20, 432-35.   Dr. Fernando concluded that Plaintiff's prognosis was "guarded."   Tr. 433.

Next, the ALJ discussed the April 29, 2013 examination of Michael K. Kim, M.D.   Tr. 20, 440.   Dr. Kim treated Plaintiff for her carpal tunnel syndrome, and recommended it could be managed conservatively with cortisone injections.   Tr. 440. Dr. Kim noted no nerve damage.   *Id.*

The ALJ then discussed the consultative evaluation of Plaintiff performed by Fatemeh Mousavi, M.D., on September 13, 2011.   Tr. 20-21.   As noted by the Commissioner, at that time Dr. Mousavi found that Plaintiff's hand and finger dexterity was intact, and that her grip strength was 5/5 bilaterally.   Tr. 402.

### V.   Analysis of issues

> *a. Whether the ALJ properly accounted for Plaintiff's carpal tunnel syndrome and osteoarthritis of the hands in the assessment of Plaintiff's RFC.*

Plaintiff first contends that the ALJ's RFC assessment was not supported by substantial evidence because it failed to account for her manipulative limitations from her carpel tunnel syndrome and osteoarthritis of her hands.   Doc. 19 at 8-12. Specifically, Plaintiff asserts that although the ALJ found that her osteoarthritis and bilateral hand degenerative changes were severe impairments at step two of the

sequential evaluation process (Tr. 17), he failed to assess "*any* manipulative limitations (i.e., limitations in reaching, gross manipulation, or fine manipulation)" in her RFC assessment.   Doc. 19 at 9 (emphasis added).   The Commissioner responds that Plaintiff's argument is without merit.   Doc. 20 at 4.   First, the Commissioner accurately points out that the ALJ accounted for Plaintiff's manipulative limitations by restricting her to occasional reaching.   *Id.* (citing Tr. 18). Such limitation, the Commissioner argues, is supported by the opinion of the state agency physician who opined that Plaintiff was limited in reaching, but was unlimited in feeling, handling and fingering.   Doc. 20 at 5 (citing Tr. 128-29). Second, the Commissioner asserts the ALJ's opinion also is supported by the September 2011 consultative examination of Dr. Fatemeh Mousavi,[2] who opined that Plaintiff's hand and finger dexterity was intact and her grip strength was 5/5 bilaterally.   Finally, the Commissioner states that Plaintiff's treatment history supports the ALJ's manipulative limitations, which reflected conservative treatment for her carpal tunnel syndrome.   Doc. 20 at 5.   The Court agrees with the Commissioner.

As noted, when an impairment does not meet or equal a listed impairment at step three, as in this case, the ALJ will proceed to step four to assess and make a finding regarding the claimant's RFC based upon all the relevant medical and other evidence in the record.   20 C.F.R. § 404.1520(e).   The RFC is the most that a

---

[2] The Commissioner incorrectly identified the physician's first name as "Patermeh." Doc. 20 at 5.   A review of actual records indicates the correct first name is "Fatemeh."   *See, e.g.*, Tr. 399-402.

claimant can do despite her limitations.   *See* 20 C.F.R. § 404.1545(a); *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004).   At the hearing level, the ALJ has the responsibility of assessing a claimant's RFC.   *See* 20 C.F.R. § 404.1546(c).   The ALJ is required to assess a claimant's RFC based on all of the relevant evidence in the record, including any medical history, daily activities, lay evidence and medical source statements.   20 C.F.R. § 404.1545(a).   The claimant's age, education, and work experience are considered in determining his RFC and whether he can return to his past relevant work, *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1520(f)), and the RFC assessment is based upon all relevant evidence of a claimant's ability to do work despite his impairments.   *Phillips*, 357 F.3d at 1238; *Lewis*, 125 F.3d at 1440 (citing 20 C.F.R. § 404.1545(a)).

First, as noted by the Commissioner, the ALJ's RFC included manipulative limitations in that it limited Plaintiff to only occasional reaching.   Tr. 18.   In making his RFC finding, the ALJ properly considered Plaintiff's symptoms and the extent to which they can reasonably be accepted as consistent with the objective medical and other evidence.   Tr. 19.   He also considered opinion evidence.   *Id.*

As discussed in more detail above, the ALJ extensively reviewed and discussed Plaintiff's medical history and testimony with respect to her hand impairments and manipulative limitations.   In 2009 when she was treated by Dr. Bustillo, she still was working at that time.   Tr. 365.   Dr. Bustillo noted her family history of osteoarthritis and that she had been treating her issues with over-the-counter medication, and he recommended that she continue taking over-the-counter medications and exercise to

increase her grip strength.   *Id.*   In September 2011, Dr. Mousavi found that Plaintiff's hand and finger dexterity was intact and her grip strength normal – 5/5 bilaterally.   Tr. 402.   A few months later, in December 2011, state agency physician Thomas Renny, D.O., opined that, Plaintiff was limited in reaching yet unlimited in feeling, fingering (fine manipulation) and handling (gross manipulation).   Tr. 128-29. Although the ALJ did not specifically discuss this finding, which would be reversible error, any error in doing so is harmless; as Dr. Renny's opinion further supports the ALJ's RFC determination with respect to limiting Plaintiff to only occasional reaching. *See Wright v. Barnhart*, 153 F. App'x 678, 684 (11th Cir. 2005) (failure for ALJ to explicitly state weight afforded to a medical opinion is harmless error if the opinion does not contradict ALJ's findings); *Caldwell v. Barnhart*, 261 F. App'x 188, 190 (11th Cir. 2008) ("An ALJ's failure to state with particularity the weight given different medical opinions is reversible error.   When, however, an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand.").   Furthermore, state agency physicians are highly qualified specialists who also are experts in Social Security disability programs, and their opinions may be entitled to great weight if the evidence supports their opinions, as it does here.   *See* 20 C.F.R. §§ 404.1627(e)(2)(i), 416.927(e)(2)(i); SSR 96-6p.

As is discussed more fully below, the ALJ gave little weight to Dr. Fernando's opinion concerning Plaintiff's ability to do work-related activities, finding it was "not well-supported by medically acceptable clinical and laboratory diagnostic techniques

and is inconsistent with the other substantial evidence of record."   Tr. 21.   Moreover, the ALJ noted that Plaintiff established through testimony that she has more ability than Dr. Fernando indicated.   *Id.*   The ALJ alone is responsible for assessing Plaintiff's RFC.   20 C.F.R. § 416.946(c).   Here, the Court finds substantial evidence supports his determination of Plaintiff's manipulative limitation to occasional reaching.

> b. *Whether the ALJ properly considered the medical opinions of Plaintiff's treating physician.*

Plaintiff argues that the ALJ improperly gave little weight to Plaintiff's treating physician, Dr. Fernando.   Doc. 19 at 12-15.   In the Eleventh Circuit, the law is clear that "the [ALJ] must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).   Moreover, "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor."   *Winschel,* 631 F.3d at 1179 (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)).   The court reiterated in *Winschel*, "[i]n the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." 631 F.3d at 1179 (citing *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)). An ALJ who fails to "state with at least some measure of clarity the grounds for his decision" cannot be affirmed, because the court cannot perform its duty to "scrutinize the record as a whole to determine whether the conclusions reached are rational." 631 F.3d at 1179 (citations omitted).

Under the regulations, opinions of treating sources usually are given more weight because treating physicians are the most likely to be able to offer detailed opinions of the claimant's impairments as they progressed over time and "may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations . . . ." 20 C.F.R. § 404.1527(c)(2). If the opinion of a treating physician as to the nature and severity of a claimant's impairment is supported by acceptable medical evidence and is not inconsistent with other substantial evidence of record, the treating physician's opinion is entitled to controlling weight. *Id.*

By contrast, if the ALJ does not accord controlling weight to a treating physician's opinion, he must clearly articulate the reasons for doing so. *Winschel*, 631 F.3d at 1179. An ALJ may discount a physician's opinion, including that of a treating doctor, when the opinion is conclusory, the physician does not provide objective medical evidence to support his opinion, the opinion is inconsistent with the record as a whole or the evidence otherwise supports a contrary finding. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c); *Crawford*, 363 F.3d at 1159-60; *Phillips*, 357 F.3d at 1240-41. Form questionnaires or so-called "checklist" opinions generally are disfavored. *See Foster v. Astrue*, 410 F. App'x 831, 833 (5th Cir. 2011) (physician's use of "questionnaire" format typifies "brief or conclusory" testimony); *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best."); *Hammersley v. Astrue*, No. 5:08-cv-245-Oc-10GRJ, 2009 WL 3053707, *6 (M.D. Fla.

Sept. 18, 2009) ("[C]ourts have found that check-off forms . . . have limited probative value because they are conclusory and provide little narrative or insight into the reasons behind the conclusions.").

Here, the ALJ fully discussed the treatment notes of Dr. Fernando in his opinion.  Tr. 20-21.  He also addressed the treating physician rule, accurately acknowledging that opinions from treating physicians on the nature and severity of a claimant's impairment "are afforded extra-significance and are controlling when they are well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence of record."  Tr. 21 (citations omitted).  With that framework, the ALJ gave little weight to Dr. Fernando's opinion regarding Plaintiff's ability to do work-related activities.  First, he found it was not well-supported by medically acceptable clinical and laboratory diagnostic techniques.  *Id.*  Next, he held it was inconsistent with the other substantial evidence of record.  Finally, he noted that Plaintiff herself testified to greater ability than indicated by Dr. Fernando.  *Id.*

The Court finds substantial evidence supports the ALJ's opinion to give little weight to Dr. Fernando's opinion.  As noted by the Commissioner, his opinion is a checklist, with no evidence or narrative to explain the significant limitations assessed.  *See, e.g.,* Tr. 431-35.  Such forms or checklists are disfavored, as noted, and have little probative value because of their conclusory nature.  *See Foster,* 410 F. App'x at 833; *Mason,* 994 F.2d at 1065; *Hammersley,* 2009 WL 3053707, *6. Furthermore, Dr. Fernando's own treatment notes did not support his opinion

concerning Plaintiff's limitations.   As noted by the Commissioner, Dr. Fernando's notes show he primarily treated Plaintiff with medication.   *See* Tr. 376-98, 426-35. No tests were performed by Dr. Fernando.   Tr. 237.   Such conservative treatment does not support Dr. Fernando's opinion concerning Plaintiff's disabling conditions. *See* 20 C.F.R. §§ 404.1529(c)(3)(v), 416.929(c)(3)(v); SSR 96-7p.   Similarly, Dr. Kim also recommended that Plaintiff's carpal tunnel syndrome could be managed conservatively with injections, and he noted no nerve damage.   Tr. 440.   The consultative evaluation performed by Dr. Mousavi in 2011 also supports the ALJ's RFC evaluation, as the physician found Plaintiff's hand and finger dexterity to be intact and her grip strength normal.   Tr. 402.

Finally, the opinion of state agency physician Dr. Renny also is at odds with the opinion of Dr. Fernando.   Findings of fact made by state agency medical and psychological consultants as to the nature and severity of a claimant's impairments must be treated as expert opinion evidence of nonexamining sources by the ALJ; but the ultimate opinions as to whether a claimant is disabled, the severity of a claimant's impairments, the claimant's RFC and the application of vocational factors are exclusively reserved to the Commissioner.   SSR 96-6p; 20 C.F.R. § 404.1527(d)(1)-(2).   Unless a treating source's opinion is given controlling weight, the ALJ must explain the weight given to the opinions of other consultants, doctors or medical specialists.   20 C.F.R. § 404.1527(e)(2)(ii); *Vuxta v. Comm'r of Soc. Sec.*, 194 F. App'x 874, 877 (11th Cir. 2006).

With the exception of Dr. Renny, the ALJ did so here.   Consistent with

manipulative limitations in the RFC as determined by the ALJ, as noted above, Dr. Renny opined that Plaintiff was limited in reaching yet unlimited in feeling, fingering and handling.   Tr. 128-29.   Although the ALJ failed to discuss the weight given to Dr. Renny's opinion, which was error as discussed above, such error was harmless; as Dr. Renny's opinion supported the finding of the ALJ.   *Wright v. Barnhart*, 153 F. App'x at 684; *Caldwell v. Barnhart*, 261 F. App'x at 190.   Thus, the result would have been the same had he specifically discussed this treatment note.   Accordingly, the Court finds substantial evidence supports the weight given to the treating physician.

> c.   *Whether substantial evidence supports the ALJ's determination concerning the severity of her mental impairments.*

Plaintiff argues that the ALJ should have found Plaintiff's mental impairments of anxiety and depression to be severe at step two of the sequential evaluation process.   Doc. 19 at 15.   As such, she argues that the ALJ improperly did not include limitations in his RFC relating to such mental impairments.   *Id.* at 16. The Commissioner responds that the ALJ found that Plaintiff had at least one severe impairment at step two, and, further, that the ALJ's decision is "fully supported" by the opinion of state agency psychologist, David Tessler, Psy.D.   Doc. 20 at 9.   Dr. Tessler opined that Plaintiff's mental impairments were non-severe.   Tr. 126.   The Court, having reviewed the record, the applicable law and the decision of the ALJ, agrees with the Commissioner.

At the second step in the sequential evaluation process, the ALJ determines whether the claimant has a severe impairment.   20 C.F.R. § 404.1520(a)(4)(ii).   If

the ALJ determines a claimant has a severe impairment, as here, the analysis moves to step three. *See* 20 C.F.R. § 404.1520(a)(4). This circuit holds that the ALJ's finding "of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement of step two." *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). This is because after proceeding beyond step two of the process, the ALJ must consider all of the claimant's impairments taken as a whole when determining whether her impairments qualify as a disability (step three) and whether she can return to her past work (step four) or, if not, whether she can perform other work available in the national economy (step five). *Id.*, *see* 20 C.F.R. § 404.1520(a)(4). Plaintiff bears the burden of establishing that her impairments are severe and prevent the performance of her past relevant work. *Bowen v. Yuckert*, 482 U.S. 146 at 146 n.5 (1987). A severe impairment is an impairment or combination of impairments that significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). "An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986).

Here, as noted above, the ALJ determined at step two that Plaintiff suffered from at least one severe impairment. Tr. 17. Specifically, he found Plaintiff had severe impairments of osteoarthritis, bilateral hand degenerative changes and

fibromyalgia, specifically discussing Plaintiff's records concerning her mental impairment of depression, including those of Dr. David Tessler, Psy.D., and Dr. Nancy Kelly, Psy.D.   Tr. 17-18.

Dr. Kelly completed a psychological evaluation of Plaintiff on November 29, 2011.   She noted at the time Plaintiff was not receiving mental health services.   Tr. 408.   She diagnosed Plaintiff with anxiety disorder, noting the results of her examination appear to be consistent with psychiatric symptoms "that may significantly interfere with the claimant's ability to function on a daily basis."   Tr. 410.   With regard to Plaintiff's work capacity, Dr. Kelly opined:

> [T]he claimant is able to follow and understand simple directions and perform simple tasks independently. She may have moderate difficulties maintaining attention. She is able to maintain a regular schedule and learn new tasks. She may have moderate difficulties performing complex tasks independently, moderate difficulties making appropriate decisions, moderate difficulties relating adequately with others and appropriately dealing with stress. Difficulties may be caused by psychiatric symptoms.

She recommended Plaintiff receive individual psychological therapy.   Tr. 411.

Dr. Tessler completed a psychiatric review technique form on December 3, 2011, opining Plaintiff has only mild limitations in activities of daily living, social functioning and concentration, persistence and pace.   Tr. 114.   At that time, Dr. Tessler noted Plaintiff cares for her pet dog, has no problems with personal care, fixes simple meals, does some light chores, goes out twice weekly along, drive, drops and manages funds.   *Id.*   She is able to read.   She visits, eats out, goes to movies and attends church.   *Id.*   The ALJ found Dr. Tessler's opinion to be persuasive and consistent with Plaintiff's other treatment records.   Tr. 17 (citing to Tr. 413-25,

records from Lee County Mental Health Center from June 6, 2012 through August 23, 2012).

The ALJ also considered the four broad functional areas set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments and found that she has mild limitations in activities of daily living; social functioning,; and concentration or pace; and there is no evidence of any episodes of decompensation of extended duration.   Tr. 17-18 (citation omitted). Thus, the ALJ determined her mental impairment is nonsevere.   Tr. 18.

The undersigned has reviewed the records and concludes that substantial evidence supports the ALJ's decision not to include Plaintiff's mental impairments as severe impairments.   Furthermore, there was no error in doing so because the ALJ found other severe impairments and proceeded with the sequential evaluation process.   *See Burgin v. Comm'r of Soc. Sec.*, 429 F. App'x 901, 902 (11th Cir. 2011). When considering his RFC analysis, the ALJ accurately summarized all of the records concerning Plaintiff's mental impairments, discussed above.   *See* Tr. 17-18. Accordingly, the Court finds no error in the ALJ's decision.

## VI.   Conclusion

Upon review of the record, the undersigned concludes that the ALJ applied the proper legal standards, and his determination that Plaintiff is not disabled is supported by substantial evidence.

ACCORDINGLY, it is hereby

**ORDERED:**

1. The decision of the Commissioner is **AFFIRMED**.

2. The Clerk of Court is directed to enter judgment pursuant to sentence four

   of 42 U.S.C. § 405(g) in favor of the Commissioner, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on this 27th day of June, 2016.

CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record